■ V.A. Tellis et al., Respondents, v Briamar Associates et al., Appellants.—In an action for the rescission of a contract to purchase real property and to recover a down payment made pursuant thereto, the defendants appeal from a judgment of the Supreme Court, Westchester County (Silberman, J.H.O.), entered March 23, 1989, which, after a nonjury trial, rescinded the contract and awarded the plaintiffs their down payment with interest.

Ordered that the judgment is affirmed, with costs.

The plaintiffs (hereinafter the buyers), contracted to purchase a parcel of land from the defendants (hereinafter the sellers), improved with a residence to be built by the sellers. The contract of sale described the property by reference to a certain filed subdivision plat. However, prior to closing, the buyers received a metes and bounds description of the property indicating that the parcel to be conveyed was not the entire lot described in the contract. It did not include 400 square feet along one edge of the parcel. When the sellers refused to rectify the situation, the buyers rescinded the contract and sought restitution of their down payment and payment for certain "extras" relative to the house. The sellers claimed that certain provisions in the contract, the offering plan, and the prospectus (which was included by reference in the contract) permitted them to modify lot lines at their discretion. After a nonjury trial, the Judical Hearing Officer found that the parties had not intended that the sellers' "right to make modification or revisions of lot lines * * * encompass[ed] a taking of some 400 square feet from property the [buyers] had contracted" to purchase.

General language in the prospectus reserves to the sellers "the right to make revisions of Lot lines and road lines from those shown on the Subdivision Map in order to preserve the natural topography of the land and to increase or decrease the size of the lots to accommodate the proposed building or buildings". However, this clause is followed by other language which includes the sellers' right to modify or revise lot lines by subtracting insubstantial amounts of common land conveyed to the homeowners' association for purposes of adding to individual lots, and for shifting the location of numbered lots. The language suggests that changes in lot lines were meant to either increase individual lot size or shift a lot's location, but not to unilaterally reduce lot size. At the very least, the provisions defining the scope of the sellers' authority to make changes in lot lines indicate that the parties did not contemplate a change that would result in a reduction of lot

area for an individual homeowner. To the extent that the clause is ambiguous it must be construed against its draftors, the sellers *(see, 731 W. Lake Rd. v Boheen,* 58 AD2d 1038). The other provisions in the offering plan and the contract that the sellers rely on are clearly derivative from this clause in the prospectus and must be read as such.

The dimensions, area and shape of a parcel of real property are vitally important *(see, Sandberg v Margold Realty Corp.,* 231 App Div 241, *revd on other grounds* 256 NY 228; *Friedman v Baron,* 223 App Div 851, *affd* 250 NY 552; *Purcel v Harper,* 52 Misc 2d 75; *cf., Shay v Mitchell,* 50 AD2d 404, *affd* 40 NY2d 1040; *Miesner v Slaughter,* 1 AD2d 1042). Thus, the sellers' failure to tender the parcel they contracted to sell constituted an anticipatory repudiation entitling the buyers to rescission and return of moneys paid to the sellers pursuant to the contract *(see, Sunshine Steak, Salad & Seafood v W.I.M. Realty,* 135 AD2d 891; *Allbrand Discount Liqs. v Times Sq. Stores Corp.,* 60 AD2d 568; *Purcel v Harper, supra).* Sullivan, J. P., Rosenblatt, Miller and Ritter, JJ., concur.